**LAW OFFICE OF STEWART KATZ**
STEWART KATZ, State Bar #127425
JOSEPH D. ELFORD, State Bar #189934
555 University Avenue, Suite 270
Sacramento, California 95825
Telephone: (916) 444-5678

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Estate of JOSE ELIZAR ARAMBULA, deceased, by and through ELIAS ARAMBULA and ANDREW ARAMBULA, minors through their mother and guardian ad litem Irma Rodriguez, as successors in interest; ELIAS ARAMBULA and ANDREW ARAMBULA, Individually; SOCORRO ARAMBULA, Individually; and AUSENCIO ARAMBULA, Individually; | No. CIV S-02-2488 FCD JFM  (Consolidated Action)  **STIPULATION OF PARTIES REQUESTING COURT APPROVAL OF SETTLEMENT OF MINOR'S CLAIMS; ORDER** |
| Plaintiffs, | |
| vs. | |
| JUDITH JOHNSON; and NANCY HARNETT, | |
| Defendants, | |
| _____/ | |

PURSUANT TO LOCAL RULE 17-202, the parties to the above-referenced action by and through their undersigned attorneys hereby stipulate and respectfully request the Court to approve the settlement of the minors' claims in this matter on the reasons set forth below.

///

///

///

### BASIS FOR APPROVAL OF PROPOSED SETTLEMENT
### OR COMPROMISE OF MINOR'S CLAIM

The above referenced case involves Plaintiffs ELIAS and ANDREW ARAMBULA, who are the minor sons of the decedent JOSE ELIZAR ARAMBULA.

The above-referenced matter was part of a consolidated civil rights action brought under 42 U.S.C. section 1983, with supplemental state law claims, on behalf of three decedents who committed suicide at the Sacramento County Main Jail. The consolidated civil rights action was brought against County of Sacramento Defendants and Regents of the University of California employee Defendants. In the consolidated action, Plaintiffs claimed that the various municipal actors/defendants caused the wrongful deaths of the decedents because defendants were deliberately indifferent to the needs of the three inmates.

The actions proceeded through discovery and law motion. Following Motions for Summary Judgment and/or Adjudication by the Defendants, this Court issued an Order, on or about December 13, 2005, dismissing the County Defendants in the ARAMBULA action. Accordingly, that action only proceeded against the Regents of the University of California employee Defendants.

After the Summary Judgment Order, the parties continued trial preparation and concluded discovery. The cases were to be tried separately. ARAMBULA was scheduled to be the first of the cases to go to trial. On the eve of the ARAMBULA trial, following extensive negotiations by the parties and a Court ordered Settlement Conference, the parties settled globally all of the matters in the consolidated action.

This Motion seeks approval of the Settlement as it applies to the minor Plaintiffs in the ARAMBULA matter.

1. **Minors' names:** ANDREW ARAMBULA; ELIAS ARAMBULA

2. **Age/Sex of Minors:** ANDREW ARAMBULA is a ten year old male, DOB 10/21/1996; ELIAS ARAMBULA is a twelve year old male, DOB 2/11/1995.

3. **Causes of Action:** The causes of action to be settled in this case on behalf of the

STIIPULATION REQUESTING APPROVAL OF MINORS' COMPROMISE; ORDER

minors involve both federal and state law claims alleged against the Regents of University of California employee Defendants – Defendants JUDITH JOHNSON and NANCY HARNETT.   Specifically, following the Summary Judgment Order, the claims that remained included Plaintiffs' claim under 42 U.S.C. section 1983 against Defendants JOHNSON and HARNETT for violation of Plaintiffs' substantive due process rights, and Plaintiffs' state law claims against Defendant HARNETT for violation of California Government Code section 856 (failure to summon medical care) and professional/medical malpractice.   In sum, the minor Plaintiffs allege that Defendants JOHNSON and HARNETT failed to take appropriate measures to prevent the suicide of decedent JOSE ELIZAR ARAMBULA.

4.     **Factual Basis:**

       The Court is well-acquainted with the facts of this case from the summary judgment motions in this case, the other pretrial motions, and the in limine motion(s).

       ARAMBULA was transferred to the Sacramento County Main Jail from the prison CDC Solano on February 21, 2001.   Upon his arrival, the jail was made aware that ARAMBULA had a history of psychiatric issues and suicide attempts.

       The mental health workers at the Jail are part of Jail Psychiatry Services (JPS), which was run by Defendant JOHNSON. The mental health services at the Sacramento County Main Jail were provided by contract by the University of California Davis through an entity known as Jail Psychiatric Services (JPS).  JUDITH JOHNSON was the director of that program and the immediate supervisor of NANCY HARNETT, the social worker who saw ARAMBULA on the day of his death.

       In March and April 2003, JPS psychiatrists conducted evaluations of ARAMBULA. The psychiatrists noted ARAMBULA's history of suicide attempts and delusions, and found that ARAMBULA was psychotic and continued his antipsychotic medication at a low dosage.

       On July 24, 2004, ARAMBULA flooded his cell and engaged in erratic behavior, including having an animated conversation with himself and banging his head into a sliding

1  glass door.  JPS staff was contacted by County personnel (custodial and medical) to

2  evaluate ARAMBULA.

3          Defendant HARNETT, an unlicensed social worker, interviewed ARAMBULA for

4  approximately ten minutes and told custody staff that there was no need for any precautions

5  and indicated that ARAMBULA was "whiney."

6          ARAMBULA was then placed back in his cell where he remained for

7  approximately four hours until he was found hanging.

8          Plaintiffs further alleged that HARNETT had a history of indifference and that

9  JOHNSON was aware of that history and failed to take appropriate actions.

10  5.      **Extent of Injuries:**   The minor Plaintiffs' injuries in this action are emotional

11  injuries resulting from the loss of the love and support of their father.

12  6.      **Compromise determination:**        As noted above, the parties reached a

13  settlement globally in the consolidated civil rights action following extensive negotiations

14  and a Court ordered Settlement Conference. A global settlement was reached because all

15  the Plaintiffs sought both closure and to avoid the uncertainties of trial (as to both liability

16  and damages),  and the defendants had greater incentive to settle all three rather than settle

17  one case they were involved in and still go to trial on the related claims. The actions and

18  claims were vigorously contested by the Defendants.  However, part of their motivation to

19  settle globally was a recognition that the costs of both that defense and the potential costs

20  of an attorney fee award should at least one of the Plaintiffs prevail, which was likely but

21  hardly a certainty.

22          While there were a number of strong points in the ARAMBULA case, particularly

23  regarding HARNETT's licensing, the apparent failure to review available records, and

24  JOHNSON's knowledge and response to these deficiencies, there were also a number of

25  issues and possible outcomes which strongly encouraged Plaintiffs to opt for the certainty

26  of settlement.  The causal link between the suicide and any malfeasance was an issue which

27  would have been a battle of experts.  One of the Plaintiff's experts' opinion was potentially

28  problematic in that the summary judgment order was partially at significant odds with his

STIIPULATION REQUESTING APPROVAL OF MINORS' COMPROMISE; ORDER

4

allocation of responsibility.  While there were voluminous mental health records, there were some significant inconsistencies within those records. Additionally, several deputies and at least one other inmate were going to testify that ARAMBULA did not give any indications of being suicidal after HARNETT saw him and that he seemed in a good mental condition after her visit and before his suicide. The damages in the case were potentially limited should Plaintiffs only prevail on state law claims by MICRA and the custodial and immigration status of the ARAMBULA parents essentially eliminated any claims regarding lost financial support.  More importantly is the economic status of the children who live with their single mother who is a nursing student. The proposed settlement in this case will help meet their present needs and significantly improve their prospects to lead productive lives.

The consolidated civil rights action resolved globally for a total current value of $1,000,000.00 with the understanding that the ARAMBULA children's portion would be paid through a structured settlement so that the amount actually paid will be closer to $1,060,000.00, and further that Irma Rodriguez will be reimbursed for her lost travel expenses related to the trial continuation on November 17, 2006. The allocation of the global settlement is broken down as follows:  $250,000.00 current value to be paid to the ARAMBULA Plaintiffs, $150,000.00 to the Abdollahi Plaintiff, $100,000.00 to the Summers Plaintiff, and $500,000.00 in fees/costs.   These figures were arrived at by weighing the relative strengths of the cases in terms of liability and damages.  These figures were further broken down so that the County of Sacramento agreed to pay $450,000.00 which included: the Summers settlement of $100,000.00; $100,000.00 of the Abdollahi settlement; and $250,000.00 in fees/costs.  The University of California Regents agreed to pay $550,000.00: $75,000.00 towards Abdollahi (with $50,000.00 allocated to Sina Abdollahi and $25,000.00 in fees/costs) and $275,000.00 toward settlement of ARAMBULA ($50,000 to be paid jointly to the parents ARAMBULA, Plaintiffs Soccorro and Ausencio Arambula, and $225,000.00 in fees/costs) plus the purchase annuities for each of the minor children, Andrew and Elias Arambula. The cost and present value of the

structured settlement/annuity for each minor Plaintiff in this matter is $100,000.00.

Because of the different administrative requirements of the varying Defendants, the action settled globally but there is no single settlement agreement signed by all parties. A copy of the settlement and release as to the ARAMBULA claims is attached as Exhibit 1. The attached Settlement Agreement and Release is for the minor Plaintiffs, as well as the wife and parents of ARAMBULA. It is signed by Irma Rodriguez, the mother of the minor children, who is designated the guardian ad litem in this matter.

The schedule of payments was crafted to both help meet the immediate needs of the children who live with their mother who is a full-time nursing student and also provide the children with the opportunity to be financially able to obtain a college or advanced vocational education.

**A. Structured Settlement Terms.**

**1. For Elias Arambula:**

- $700.00 payable monthly, beginning November 1, 2007, for 2 years, 4 months certain only. Last guaranteed payment is due February 1, 2010;

- $300.00 payable monthly, beginning March 1, 2010, for 3 years certain only. Last guaranteed payment is due February 1, 2013;

- $11,525.00 payable on August 1, 2013;

- $11,525.00 payable on January 1, 2014;

- $11,525.00 payable on August 1, 2014;

- $11,525.00 payable on January 1, 2015;

- $11,525.00 payable on August 1, 2015;

- $11,525.00 payable on January 1, 2016;

- $11,525.00 payable on August 1, 2016;

- $11,525.00 payable on January 1, 2017;

- $12,330.95 payable on February 11, 2020.

**2.  For Andrew Arambula:**

- $700.00 payable monthly, beginning November 1, 2007, for 4 years certain only.  Last guaranteed payment is due October 1, 2011;

- $300.00 payable monthly, beginning November 1, 2011, for 3 years certain only.  Last guaranteed payment is due October 1, 2014;

- $10,210.00 payable on August 1, 2014;

- $10,210.00 payable on January 1, 2015;

- $10,210.00 payable on August 1, 2015;

- $10,210.00 payable on January 1, 2016;

- $10,210.00 payable on August 1, 2016;

- $10,210.00 payable on January 1, 2017;

- $10,210.00 payable on August 1, 2017;

- $10,210.00 payable on January 1, 2018;

- 11,063.87 payable on October 21, 2021.

The above payments for Elias and Andrew Arambula will be made to the guardian of the estate of the child during the minority of the children and will be utilized for the children's health and well-being.  As noted above, the present day value of the structured settlements is $100,000.00 for each minor Plaintiff.  The actual payouts are $134,930.95 for ELIAS ARAMBULA and $137,143.87 for ANDREW ARAMBULA.

**B.  Attorney's Fees and Costs.**

Plaintiffs' attorney, Stewart Katz, was hired by Plaintiffs through their guardian ad

litem.  Plaintiffs' attorney and associates were retained prior to filing of this action and have handled this case throughout these proceedings.  As noted above, this matter was part of a consolidated civil rights action dealing with the Jail Suicides at the Sacramento County Main Jail.  Since these matters were consolidated from the onset it is difficult if not impossible (with the exception of filing fees and individual decedent records) to discern which costs and fees applied to each of the matters.  Additionally, as the Court has recognized by the consolidation order, the discovery in this case regularly applied to all of the matters.  Accordingly, Plaintiffs' counsel has attached as Exhibit 2 the costs associated with the consolidated civil rights action.  Those costs equal $ 90,603.00.

In addition to the costs, counsel's office spent over 2,900 hours prosecuting the civil rights action.  Based on hourly rates of $350.00 (2156 hours) for Stewart Katz, $375.00 (103 hours) for Joseph Elford, $250.00 (297 hours) for Costa Kerestenzis, $150.00 (380 hours) for Elizabeth Dankof  plus contracted paralegals paid $3,120.00, the attorney's fees for the consolidated civil rights action totaled $927,595.00.

Finally, Plaintiffs' counsel notes that the amount of the settlement for fees and costs is appropriate as it has been approved by the guardian ad litem for the minors, and given the risk taken by Plaintiffs' counsel to prosecute this matter.  The consolidated civil rights action monopolized counsel's office, a small office usually staffed only by Stewart Katz and a single associate, for the last four years in terms of resources and time.  Counsel took the matters on a contingency basis and advanced all fees and costs and thus went unpaid during the prosecution of this action.

Moreover, the ARAMBULA case involved more time and resources than either of the other two cases given that this case was fully prepared for trial and that the experts had

voluminous medical and mental health records to review which were specific to ARAMBULA .

Dated: October 5, 2007                    LAW OFFICE OF STEWART KATZ


_____/s/ Stewart Katz_____
STEWART KATZ,
Attorney for Plaintiffs




Dated:  October 5, 2007                   WILKE, FLEURY, HOFFELT, GOULD & BIRNEY LLP


_____/s/ Robert Tyler_____
ROBERT F. TYLER
Attorney for Defendants


**IT IS SO ORDERED:**

Dated:  October 9, 2007


_____
FRANK C. DAMRELL, JR.
UNITED STATES DISTRICT JUDGE