**LAW OFFICE OF STEWART KATZ**
STEWART KATZ, State Bar #127425
JOSEPH D. ELFORD, State Bar #189934
555 University Avenue, Suite 270
Sacramento, California 95825
Telephone: (916) 444-5678

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Estate of JAKE SUMMERS, deceased, by and through his mother DENISE HOFF (conservatee, by and through her guardian ad litem Judy Carver), as successor in interest; and DENISE HOFF, Individually,<br><br>　　　　Plaintiffs,<br><br>　vs.<br><br>COUNTY OF SACRAMENTO; Sacramento County Sheriff's Department Sheriff LOU BLANAS; Sacramento County Sheriff's Department Captain, JIM COOPER,<br><br>　　　　Defendants,<br>_____/ | No. CIV S-02-2488 FCD JFM<br><br>(Consolidated Action)<br><br>**STIPULATION OF PARTIES REQUESTING COURT APPROVAL OF SETTLEMENT OF CLAIMS; ORDER** |

　　　　PURSUANT TO LOCAL RULE 17-202, the parties to the above-referenced action by and through their undersigned attorneys hereby stipulate and respectfully request the Court to approve the settlement of the claims of Denise Hoff, who is presently under a conservatorship as a result of mental illness/incapacity in this matter, on the reasons set forth below.

///

///

///

STIPULATION OF PARTIES REQUESTING COURT APPROVAL OF SETTLEMENT OF CLAIMS - ORDER

1

### BASIS FOR APPROVAL OF PROPOSED SETTLEMENT
### OR COMPROMISE OF AN INCOMPETENT'S CLAIM

The above referenced case involves Plaintiff DENISE HOFF who is the mother of the decedent JAKE SUMMERS.

The above-referenced matter was part of a consolidated civil rights action brought under 42 U.S.C. section 1983, with supplemental state law claims, on behalf of three decedents who committed suicide at the Sacramento County Main Jail. The consolidated civil rights action was brought against County of Sacramento Defendants and Regents of the University of California employee Defendants. In the consolidated action, Plaintiffs claimed that the various municipal actors/Defendants caused the wrongful deaths of the decedents because Defendants were deliberately indifferent to the needs of the three inmates. Defendants denied any liability or wrongdoing.

The actions proceeded through discovery and law and motion. Following Motions for Summary Judgment and/or Adjudication by the Defendants, this Court issued an Order, on or about December 13, 2005, dismissing the University of California (Jail Psychiatric Services) employee Defendants' action. Accordingly, that action only proceeded against County of Sacramento Defendants.

After the Summary Judgment Order, the parties continued trial preparation and concluded discovery. The cases were to be tried separately. ARAMBULA was scheduled to be the first of the cases to go to trial. On the eve of the ARAMBULA trial and on the eve of the SUMMERS pretrial conference, following extensive negotiations by the parties and a Court ordered Settlement Conference, the parties settled globally all of the matters in the consolidated action.

This Motion seeks approval of the Settlement as it applies to the SUMMERS matter.

1. **Incompetent's name:**     DENISE HOFF
2. **Age/Sex of Incompetent:** DENISE HOFF is a 53 year-old female
3. **Causes of Action:**     The causes of action to be settled in this case on behalf of

STIPULATION OF PARTIES REQUESTING COURT APPROVAL OF SETTLEMENT OF CLAIMS - ORDER

2

1  Ms. HOFF involve federal law claims alleged against the COUNTY OF SACRAMENTO
2  and former jail commander JAMES COOPER and Sheriff LOU BLANAS in their official
3  capacities. Specifically, following the Summary Judgment Order, the claims that remained
4  were Plaintiff's claim under 42 U.S.C. Section 1983 for inadequate staffing and cell check
5  policies and practices.

6  4.  **Factual Basis:**

7  The Court is well acquainted with the facts of this case from the summary judgment
8  motions in this case, the other pretrial motions, and the in limine motions.

9  SUMMERS was a pretrial detainee at the Sacramento County Main Jail for a strong
10 arm robbery which consisted of stealing a tip jar from a Jamba Juice. Upon his booking at
11 the jail, SUMMERS did not impart the custody, medical or mental health staff with
12 information that would have put them on any heightened notice regarding his risk of
13 suicide. Although SUMMERS was addicted to heroin, he gave indications that he was no
14 longer suffering from the effects of withdrawal from the drug.

15 In the late morning of February 8, 2002, SUMMERS was returned to his cell
16 following a court appearance. SUMMERS did not have a cellmate. Summers was then
17 found dead by an inmate worker at 5:45 p.m. SUMMERS had written a suicide note on the
18 cell's wall before hanging himself.

19 Plaintiff alleges that after the court appearance there were no cell checks performed
20 and that a single deputy, Ross Kingsley, was working the housing unit for the relevant time
21 period. Furthermore, Plaintiff alleges that Deputy Kingsley recorded that cell checks were
22 performed in the official log book but that those checks were never performed (an improper
23 practice Plaintiff claims is called "pencil-whipping"). Plaintiff thus alleges that Defendants
24 were responsible for SUMMERS' suicide and that the policy at the time permitted only a
25 single officer to be working a housing unit and that this occurred with some frequency as a
26 result of understaffing.

27 The Defendants deny that Plaintiff's allegations are true. In the investigation
28 following the suicide, Deputy Kingsley explained that the recorded cell checks were made

1  by observing mass movement of prisoners within the housing unit.  Defendants contend
2  that policy required cell checks every hour and that when a deputy, like Kingsley, found
3  himself alone on the unit, it is the housing deputy's obligation to call other units to send a
4  deputy to either perform the cell checks or cover the control booth so the solo officer can
5  make the cell checks.  Kingsley was never disciplined for failing to see that cell checks
6  were performed.  Kingsley was not disciplined for his log entries.  Defendants contend that
7  although the policy called for at least two deputies to be assigned to every housing unit,
8  there were occasions when only one deputy was available.  The evidence is disputed as to
9  the frequency with which housing units were staffed with only one deputy.

10  5.    **Extent of Injuries:**    The Plaintiff's injuries in this action are emotional injuries
11  resulting from the loss of the love of her son.

12  6.    **Compromise determination:**   As noted above, the parties reached a settlement
13  globally in the consolidated civil rights action following extensive negotiations and a Court
14  ordered Settlement Conference. A global settlement was reached because all the Plaintiffs
15  sought both closure and to avoid the uncertainties of trial (as to both liability and damages),
16  and the defendants had greater incentive to settle all three rather than settle one case they
17  were involved in and still go to trial on the related claims. The actions and claims were
18  vigorously contested by the Defendants.  However, at least part of their motivation to settle
19  globally was the recognition of the costs of that defense and the potential costs of an
20  attorney fee award should at least one of the Plaintiffs prevail.

21       While Plaintiff can proffer several strong points in the SUMMERS case,
22  particularly regarding the false log entries of Kingsley and the alleged evidence of
23  understaffing, there were also a number of issues and possible outcomes which strongly
24  encouraged Plaintiff to opt for the certainty of settlement.  The causal link between the
25  suicide and any malfeasance was a major issue of contention. From the Plaintiff's
26  perspective, this was made more difficult to prove as a result of the Court finding the
27  suicide prevention policies at the time constitutionally acceptable. This would have
28  required a difficult, or at least linguistically challenging, parsing of the cell check policies

from the suicide prevention polices where the central issue would have been the effect of those policies on the failure to prevent the SUMMERS suicide.

Defendants' expert, Lindsay Hayes, a nationally renowned expert in suicide prevention in correctional institutions, saw no causal connection between the cell check policy, practices or procedures and the SUMMERS' suicide. Since ligature strangulation can produce death within approximately 5 minutes, the Plaintiff faced a difficult hurdle to connect the failure to conduct hourly cell checks to the suicide. Plaintiff's case could well have hinged upon the effectiveness of the cross examination at trial of an experienced professional witness. Additionally, the medical testimony could well have led a rational fact finder to the conclusion that a significant portion of the alleged false cell check reports were post death and therefore irrelevant.

The consolidated civil rights action resolved globally for a total current value of $1,000,000.00 with the understanding that HOFF would receive $100,000.00. The allocation of the global settlement is broken down as follows: $250,000.00 current value to be paid to the Arambula Plaintiffs, $150,000.00 to the Abdollahi Plaintiff, $100,000.00 to the SUMMERS Plaintiff, and $500,000.00 in fees/costs. These figures were arrived at by weighing the relative strengths of the cases in terms of liability and damages. These figures were further broken down so that the County of Sacramento agreed to pay $450,000.00 which included: the SUMMERS' settlement of $100,000.00; $100,000.00 of the Abdollahi settlement; and $250,000.00 in fees/costs. The University of California Regents agreed to pay $550,000.00: $75,000.00 towards Abdollahi (with $50,000.00 allocated to Sina Abdollahi and $25,000.00 in fees/costs) and $475,000.00 toward settlement of Arambula ($50,000 to be paid jointly to the parents of Arambula, $100,000 toward the purchase of annuities for each of the Arambula minor children, Andrew and Elias Arambula, and $225,000.00 in fees/costs).

HOFF may be the Plaintiff who benefited the most from the consolidated resolution. All parties acknowledged that SUMMERS would be the most difficult to prove at trial. The parties were further apart in their evaluation of the settlement value of the

1  SUMMERS case than any of the others. Standing alone, the Defendants appear to have
2  considered SUMMERS worth no more than a figure in the low five-figure range.

3  Because of the different administrative requirements of the varying Defendants, the
4  action settled globally but there is no single settlement agreement signed by all parties.  A
5  copy of the settlement and release as to the SUMMERS claims is attached as Exhibit 1.
6  The attached Settlement Agreement and Release is for both the SUMMERS and
7  ABDOLLAHI claims against the County of Sacramento.

8  **A.  Settlement Terms.**

9  The guardian ad litem intends to use the $100,000.00 to establish a special needs
10 trust for Ms. HOFF with her adult daughter, Tanya Summers, as the party with the
11 authority to disburse the funds.  This has been discussed with and approved by Ms. HOFF
12 at times when she was off of a conservatorship (which was after the general terms were
13 agreed to but before paperwork was executed.). She recognizes that she recurrently has
14 medication issues/lapses which have lead to numerous conservatorships. Attorney Judy
15 Carver has been the guardian ad litem in this matter, under appointment by the Sacramento
16 Superior Court prior to the action being filed.

17 This settlement has been approved by the Sacramento Superior Court. A copy of
18 that order has been attached as Exhibit 2.

19 **B.  Attorney's Fees and Costs.**

20 Plaintiffs' attorney, Stewart Katz, was hired by Plaintiffs through their guardian ad
21 litem.  Plaintiffs' attorney and associates were retained prior to filing of this action and
22 have handled this case throughout these proceedings.  As noted above, this matter was part
23 of a consolidated civil rights action dealing with the Jail Suicides at the Sacramento County
24 Main Jail.  Since these matters were consolidated from the onset it is difficult if not

STIPULATION OF PARTIES REQUESTING COURT APPROVAL OF SETTLEMENT OF
CLAIMS - ORDER                                                                                                         6

impossible (with the exception of filing fees and individual decedent records) to discern which costs and fees applied to each of the matters. Additionally, as the Court has recognized by the consolidation order, the discovery in this case regularly applied to all of the matters. Accordingly, Plaintiffs' counsel has attached as Exhibit 3 the costs associated with the consolidated civil rights action. Those costs equal $ 90,603.00.

In addition to the costs, counsel's office spent over 2,900 hours prosecuting the civil rights action. Based on hourly rates of $350.00 (2156 hours) for Stewart Katz, $375.00 (103 hours) for Joseph Elford, $250.00 (297 hours) for Costa Kerestenzis, $150.00 (380 hours) for Elizabeth Dankof, plus contracted paralegals paid $3,120.00, the attorney's fees for the consolidated civil rights action totaled $927,595.00.

The Defendants have not undertaken any investigation or discovery regarding the claim for attorney's fees or Plaintiffs' costs incurred in prosecuting the cases. Defense counsel agree that Plaintiffs' attorneys devoted substantial portions of the past four years prosecuting the cases and expended substantial sums in costs for depositions, expert witnesses and out-of-state travel. The Defendants do no stipulate that the hourly rates are appropriate but agree that the effort expended, the nature of the experience displayed, the costs expended and risked, and the result achieved make the attorney's fees contemplated by this settlement reasonable and appropriate.

Finally, Plaintiffs' counsel notes that the amount of the settlement for fees and costs is appropriate as it has been approved by the guardian ad litem and the Superior Court and given the risk taken by Plaintiffs' counsel to prosecute this matter. The consolidated civil rights action monopolized counsel's office, a small office usually staffed only by Stewart Katz and a single associate, for the last four years in terms of resources and time. Counsel

took the matters on a contingency basis and advanced all fees and costs and thus went unpaid during the prosecution of this action.

Dated: November 30, 2007              LAW OFFICE OF STEWART KATZ

                                                      /s/ Stewart Katz
                                                     STEWART KATZ,
                                                     Attorney for Plaintiff

Dated:  November 30, 2007             LONGYEAR, O'DEA & LAVRA LLP

                                                      /s/ D. Van Longyear
                                                   D. VAN LONGYEAR
                                                   Attorney for Defendants

**IT IS SO ORDERED.**

Dated: December 7, 2007

                                    FRANK C. DAMRELL, JR.
                                    UNITED STATES DISTRICT JUDGE